UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SOFAER GLOBAL HEDGE FUND,              ) | |
|                     Plaintiff,              ) | |
| vs.              ) | Cause No. 1:09-cv-1191-WTL-DML |
| BRIGHTPOINT, INC. and ROBERT J. LAIKIN              ) | |
|                     Defendants.              ) | |

**ENTRY ON MOTION TO DISMISS**

Before the Court is the Defendants' Motion to Dismiss (Docket No. 17). The motion is fully briefed, and the Court being duly advised, now **DENIES** the motion for the reasons set forth below.

**I.  RULE 12(b)(6) STANDARD**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must take the facts alleged in the Complaint as true and draw all reasonable inferences in favor of the Plaintiff. The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and there is no need for detailed factual allegations. However, the statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**II.  BACKGROUND**

Brightpoint, Inc. ("Brightpoint") is an Indianapolis-based corporation that was founded

by Robert J. Laikin. Laikin remains the chief executive officer and serves as chairman of Brightpoint's board of directors. At some point, on Laikin's advice, Brightpoint loaned Chinatron Group Holdings Limited ("Chinatron") $5.4 million. Chinatron was to repay this debt by the end of December 2007. However, in December 2007, Chinatron informed Brightpoint that it would not be able to repay the debt unless it received a loan or other source of funding. Brightpoint was concerned about this turn of events because if Chinatron did not repay its debt, Brightpoint would have to record the $5.4 million as bad debt. This would reflect poorly on both Brightpoint and Laikin.

In mid-December 2007, Chinatron's chief executive officer, John Maclean Arnott, spoke with Laikin about the possibility of Brightpoint purchasing Mobiltron France ("Mobiltron"), one of Chinatron's European subsidiaries. During this conversation, Laikin stated that Brightpoint would purchase Mobiltron by March 2008, and would pay $14 million for the company.

After speaking with Laikin, Arnott called Sofaer to request a loan. Arnott proposed that Sofaer loan Chinatron $10 million at twenty percent interest. Chinatron would repay Sofaer out of the proceeds of the Mobiltron sale by the end of March 2008. Sofaer agreed to consider the loan but asked to speak with Laikin before making a final determination. Accordingly, Arnott set up a December 17, 2007, conference call between himself, Laikin, and Sofaer.

During this conference call, Sofaer explained that it was contemplating making a $10 million loan to Chinatron and stated that its decision to make the loan was contingent on Brightpoint's purchase of Mobiltron by the end of March 2008. Laikin stated that "the deal for Brightpoint to purchase Mobiltron France for $14,000,000 by the end of March 2008 was 'as good as a done deal.'" Compl. ¶ 35. Laikin averred that the deal was "'99.9% done'" and that he

2

was "'99.9% certain'" that the deal would go through by the end of March 2008. *Id.* Laikin also stated that the Mobiltron acquisition was a "'relatively small deal for Brightpoint'" so he could enter into the deal without board or management approval. *Id.* ¶ 36. Laikin repeatedly emphasized that he would get the deal done by the end of the first quarter of 2008 and that he would make the Mobiltron deal happen. *See id.* ¶ 37. However, despite his oral assurances, Laikin refused to provide written confirmation of the Mobiltron acquisition. Nevertheless, in December 2007, Sofaer loaned Chinatron $10 million on the above-stated terms.

In January 2008, Chinatron used a portion of the $10 million loan to repay the $5.4 million it owed Brightpoint. In early March 2008, Sofaer learned that Brightpoint was beginning to conduct due diligence on Mobiltron. This was concerning because it implied that the Mobiltron deal was not, in fact, 99.9% done. When Sofaer asked why Brightpoint was conducting due diligence, Laikin replied that Brightpoint could not simply pay a "set price" for Mobiltron. Laikin also explained that Brightpoint's European management had to determine Mobiltron's value before it could make an offer. Ultimately, Brightpoint offered to buy Mobiltron for $6.25 million. Chinatron rejected that offer.

Without the proceeds from the Mobiltron sale, Chinatron has been unable to repay Sofaer. Accordingly, Sofaer brought this suit against Brightpoint and Laikin, asserting claims for actual fraud, constructive fraud, and promissory estoppel.

### III.  DISCUSSION

Laikin and Brightpoint have now moved to dismiss Sofaer's Complaint. The Defendants

argue that Sofaer has not properly plead any of its claims under Indiana law,[1] and thus dismissal is appropriate under Rule 12(b)(6). Having reviewed the Complaint and the parties' briefs, the Court believes that the Defendants' arguments are not persuasive.  At this point in the litigation, when the Court is required to take all of the facts in the Complaint as true, and draw all reasonable inferences in the Plaintiff's favor, the Court believes that Sofaer has indeed plead facts that raise the right to relief above a speculative level.  Because Sofaer has set forth plausible facts that could permit recovery on all of its claims the Defendants' Motion to Dismiss is **DENIED**.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (Docket No. 17) is **DENIED**.

SO ORDERED:  03/31/2010

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

A. Richard Blaiklock
Lewis & Wagner
rblaiklock@lewiswagner.com

---

[1] Jurisdiction in this case is based on diversity of citizenship.  "As a federal court sitting in diversity, we apply state substantive law and federal procedural law."  *Camp v. TNT Logistics Corp.*, 553, F.3d 502, 505 (7th Cir. 2009).  The parties agree that Indiana substantive law applies to their dispute.

James V. Masella III
Blank Rome, LLP
jmasella@blankrome.com

Matthew L. Rea
Hall Render Killian Heath & Lyman
mrea@hallrender.com

Amrish V. Wadhera
Foley Hoag LLP
awadhera@foleyhoag.com

Robert Francis Wagner
Lewis & Wagner
rwagner@lewiswagner.com

Brandon F. White
Foley Hoag LLP
bwhite@foleyhoag.com